# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**STARR HARRIS,**                                           Chapter 7
         Debtor                                    Case No. 12-10295-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**STARR HARRIS,**
         Plaintiff
v.                                                  Adv. P. No. 13-1316
**BOSTON PRIVATE BANK &
TRUST COMPANY; JUST-A-START
CORPORATION; GATEVIEW CONDO-
MINIUM TRUST; MASSACHUSETTS
HOUSING PARTNERSHIP FUND BOARD,**
         Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Plaintiff's Motion for a Preliminary Injunction.  The

Plaintiff, Starr Harris (the "Plaintiff" or the "Debtor"), requests the Court to "reinstate the

automatic stay and/or enjoin the defendants, jointly and severally, from any action to

complete or reinitiate foreclosure of their mortgages" in aid of an order converting  her

Chapter 7 case to Chapter 13. Two of the defendants, Just-A-Start Corporation ("JASC"), the

holder of a mortgage granted by the Debtor on April 6, 2011, and Boston Private Bank &

Trust Company ("Boston Private Bank"),  the holder of a first and second mortgage, both

dated January 9, 2007, object to the relief requested by the Debtor.  The City of Cambridge

1

also filed an Objection, although it was not named as a defendant. The Debtor has moved

to strike its Objection. In response, the City of Cambridge filed a Partially Assented to

Motion to Intervene under Fed. R. Bankr. P. 7024 indicating that JASC and Boston Private

Bank assent to its intervention.

The Court heard the Debtor's Motion for a Preliminary Injunction on August 1, 2013.

Prior to that date, on July 23, 2013, the Court conducted an evidentiary hearing with respect

to the Debtor's "Emergency Motion to Re-Convert to Chapter 13 and Reinstate Automatic

Stay" which was filed on July 21, 2013 in the main case.

The critical issues presented are whether the Debtor has satisfied her burden of

demonstrating a likelihood of obtaining confirmation of a Chapter 13 plan, thus warranting

conversion of her case from Chapter 7 to Chapter 13, and, in conjunction with a proposed

plan attached to her Motion for a Preliminary Injunction, whether the Debtor has satisfied

the provisions of 11 U.S.C. § 1325(a)(5) with respect to the objecting parties, thus warranting

the entry of an order reinstating the automatic stay. An important predicate legal issue is

whether the Debtor is entitled to reconvert her case to Chapter 13 in the first place. *See* In

re Noll, 491 B.R. 550 (Bankr. E.D. Wis. 2013).[1]

---

[1] In Noll, the court observed:

Prior to BAPCPA, the leading Chapter 13 Treatise opined that: "After a
debtor has once converted from Chapter 13 to Chapter 7, the Code seems to
prohibit reconversion to Chapter 13." Keith M. Lundin and William H.
Brown, CHAPTER 13 BANKRUPTCY, 4th Edition § 328.1 (2004). With
BAPCPA's enactment of the means test to prevent abusive Chapter 7 cases,
reconversion is appropriate upon a finding of abuse under § 707(b)(1). *See*
Advanced Control Solutions, Inc. v. Justice, 639 F.3d 838 (8th Cir. 2011).
Whether reconversion is appropriate under other circumstances is

At the hearing held on July 23, 2013, the Court afforded the Debtor an opportunity to present evidence and the parties an opportunity to cross-examine her.  Following the hearing, the Court entered an order denying the Emergency Motion to Re-Convert Case to Chapter 13 and Reinstate Automatic Stay.  The Debtor, however, filed an Emergency Motion to Alter or Amend Order.  On July 24, 2013, the Court granted the Debtor's Motion to Alter or Amend Order in part and scheduled a further evidentiary hearing on August 1, 2013 as the Debtor filed in accordance with the Court's order the above-captioned adversary proceeding, a formal motion for injunctive relief, a written proposed amended Chapter 13 plan, and written documentation as to her income from contributions from family members.

Although the Debtor and defendants JASC and Boston Private Bank, as well as the City of Cambridge, dispute the Debtor's entitlement to the relief she seeks, the material facts necessary to determine the Motion for a Preliminary Injunction do not present a factual or

---

unsettled. *See, e.g.,* In re Buccolo, 397 B.R. 527 (Bankr.D.N.J.2008), *aff'd,* 2009 WL 2132435, 2009 U.S. Dist. LEXIS 61029 (D. N.J. July 13, 2009) (reconversion only appropriate under § 706(d)); Povah v. Hansbury & Finn, Inc. (In re Povah), 455 B.R. 328 (Bankr. D. Mass. 2011) (court has discretion to permit reconversion, but debtor's circumstances must be closely scrutinized); In re Muth, 378 B.R. 302 (Bankr. D. Colo. 2007) (§ 706(a) prohibits reconversion); In re Green, 169 B.R. 480 (Bankr. S. D. Ga. 1994) (multiple conversions are evidence of bad faith). None of these cases addressed the situation where a new claims bar date is set after reconversion. Judges Lundin and Brown raise some of the issues involved with post-petition claims and cheerfully conclude: "The good news is that reconversion to Chapter 13 is rare enough that most of us can complete our careers without being forced to figure out the meaning of timeliness for the filing of proofs of claim after reconversion."

491 B.R. at 552-53.

legal dispute and are evident from a review of the record of proceedings. Accordingly, the

Court makes the following findings of fact and rulings of law in accordance with Fed. R.

Bankr. P. 7052.

## II. BACKGROUND[2]

    A. <u>The Debtor's Prior Bankruptcy Cases</u>

    The Debtor filed a Chapter 13 petition on January 16, 2012. She disclosed two prior

Chapter 13 cases on the petition, namely Case No. 09-20729-JNF and Case No. 10-17421-JNF.


    The Debtor's first Chapter 13 case, which was filed on November 5, 2009, was

dismissed on June 24, 2010. In that case, the Debtor amended her Chapter 13 plan twice and

Schedule J-Current Income of Individual Debtor(s) twice. In her first Chapter 13 case, she

did not disclose any interest in real property located at 20 Upton Street, Cambridge,

Massachusetts.

    The Court granted the Chapter 13 Trustee's Motion to Dismiss, which was filed on

May 5, 2010. In that motion, the Chapter 13 Trustee represented that she could not

recommend confirmation of the Debtor's plan because the Debtor was in arrears according

to the terms of her plan. In its order granting the Chapter 13 Trustee's motion, the Court

stated: "[i]n the absence of any identifiable source of funds from which the Debtor can cure

---

[2] The Court may take judicial notice of its docket. *See* <u>LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)</u>, 196 F.3d 1, 8 (1st Cir.1999), *cert. denied,* 530 U.S. 1230 (2000) ("The bankruptcy court appropriately took judicial notice of its own docket.").

the plan arrears, the Court finds that cause exists to dismiss the case."

During her first Chapter 13 case, both the Trustees of the Gateview Condominium Trust (the "Gateview Condominium Trust") and Boston Private Bank filed motions for relief from the automatic stay to foreclose on her liens they hold due to payment defaults with respect to property identified as Unit 7, Gateview Condominium, 2497 Massachusetts Avenue, Cambridge, Massachusetts (the "Property").  The Court approved a stipulation between the Debtor and Boston Private Bank prior to dismissing the Debtor's case.  The dismissal order entered, however, before the Court ruled on the motion for relief from the automatic stay filed by the Gateview Condominium Trust, which became moot.

On July 7, 2010, before the Chapter 13 Trustee was discharged in the first case, the Debtor filed a second Chapter 13 case.  In the second case, she amended her Chapter 13 plan and amended Schedules I and J as well.  Although she disclosed an interest in the Property, the Debtor did not disclose any interest in the property located at 20 Upton Street, Cambridge, Massachusetts.

With respect to the Property, the Gateview Condominium Trust filed a motion for relief from the automatic stay, alleging arrears in payment of condominium fees as of petition date in the amount of $14,139, as well as postpetition fees and collection costs of $1,924.  On October 21, 2010, the Court granted the Gateview Condominium Trust relief from the automatic stay to enforce its statutory lien and to pursue its statutory remedies pursuant to Mass. Gen. Laws ch. 183A, § 6.

Approximately three months later, on January 25, 2011, the Debtor filed an

5

"Emergency Motion to Impose the Automatic Stay" in which she represented the Property is "a restrictive deed low income property" which she "acquired in 2007 through an affordable housing program and Just-A-Start Inc. in conjunction with the City of Cambridge and Massachusetts Department of Housing and Community Development." As grounds for reimposition of the automatic stay, the Debtor stated that the City of Cambridge was prepared to make a loan to the Debtor to cure the condominium fees due, as well as arrearages owed to Boston Private Bank.  The Gateview Condominium Trust opposed the Debtor's Emergency Motion, stating the Debtor had been delinquent in the payment of Condominium fees since September 2007, adding that since October 1, 2009 the Debtor had made only one payment, which was on January 22, 2010 in the amount of $266.00, and that postpetition condominium fees totaled $7,570.00.

On February 9, 2011, the Debtor filed an Expedited Motion to Incur Debt pursuant to which she sought authority to borrow money from the City of Cambridge in the sum of $16,180.00 to pay delinquent condominium fees and mortgage payments to Boston Private Bank.  Although the Court granted the Debtor's Motion to Impose the Automatic Stay, as well as the Motion to Incur Debt, and the parties submitted an agreed order, the Debtor filed a Second [Amended] Motion to Incur Debt on March 15, 2011 in which she represented that new terms of her borrowing agreement with the City of Cambridge were more favorable than those set forth in her prior motion.  The Court granted the Debtor's amended motion.

Despite the allowance of those motions, the Chapter 13 Trustee, on May 12, 2011, moved to dismiss the Debtor's case for failure to make plan payments, stating "[t]he Debtor

6

is in arrears according to the terms of the Plan totaling $779 which is equal to 4.8 month(s) of plan payments." The Debtor filed a response indicating her intention to cure plan arrears, but she failed to submit evidence of any payments to cure the default, and the Court dismissed her second Chapter 13 case on June 29, 2011.

As noted above, the Debtor filed a third Chapter 13 case on January 16, 2012. Approximately two weeks later, on February 1, 2012, she filed her schedules of assets and liabilities, Statement of Financial Affairs, and Chapter 13 plan, together with other required documents.  For an undisclosed reason, she amended her plan and Schedule J the same day.

On Schedule A-Real Property, she listed the Property with a current value of $140,000, subject to secured claims totaling $200,885.90.  On Schedule D-Creditors Holding Secured Claims, she listed only Boston Private Bank as the holder of two mortgages. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, she listed claims totaling $21,383.00.  On Schedules I and J-Current Income and Expenditures of Individual Debtor(s), she disclosed Social Security disability income of $1,500 and contributions totaling $850 (comprised of a contribution from her daughter in the sum of $500 and an additional contribution of $300 from "teen parent") for a total  average monthly income of $2,350, and expenses of $2,144, including condominium fees of $263.  Through her amended Chapter 13 plan, the Debtor proposed to make payments of $206 for 60 months with no dividend to unsecured creditors.

The Debtor's third Chapter 13 case lasted for seven months.  On February 17, 2012, the  Gateview Condominium Trust filed a Motion to Confirm Automatic Stay Is Not in Effect, citing 11 U.S.C. § 362(c)(3)(B); on February 24, 2012, the Commissioner of

Massachusetts Department of Revenue filed a Notice of Unfiled Prepetition Tax Returns; and, on March 1, 2012, the Chapter 13 Trustee filed a Motion to Dismiss for failure to make plan payments; for failure to disclose an interest in the property located at 20 Upton Street, Cambridge Massachusetts; and for failure to list payments of $300 per month on Schedule J to JASC.

The Debtor, on March 27, 2012, responded to the Chapter 13 Trustee's motion, in part, by filing a Motion to Amend Schedule A, Schedule D, Schedule I, Schedule J and Matrix List of Creditors, stating:

> The Debtor amends Schedule A to disclose the Debtors' [sic] 1/3 ownership and value of the real property located at 20 Upton Street, Cambridge, Massachusetts.

> Schedule D is amended to include the secured claim of creditor Just-A-Start.

> Schedule I is amended to reflect a contribution from the Debtor's friend in the amount of $400.00 per month[.]

> Schedule J is amended to reflect the $300 per month payment to Just-A-Start and to more accurately reflect the Debtor's monthly expenses to support a feasible Amended Chapter 13 Plan.

Specifically, on Schedule A, the Debtor indicated that she owned a 30% interest in the Upton Street property, which she valued at $195,614 based on a total property value of $586,900. As a result of adjustments to Schedules I and J, the Debtor disclosed monthly net income of $717.

On March 29, 2012, the Court granted the Gateview Condominium Trust relief from the automatic stay to file a complaint to perfect its lien for unpaid fees and to obtain a priority statutory lien under Massachusetts law. With respect to the Chapter 13 Trustee's

Motion to Dismiss, the Debtor and the Chapter 13 Trustee, on April 11, 2012, requested the

Court to enter an agreed order, which provided in part the following:

> ORDERED THAT IF THE DEBTOR FAILS: I) TO PAY TO THE TRUSTEE BY
> CERTIFIED FUNDS, BANK CHECK OR MONEY ORDER THE SUM OF
> $416.00 BY NOON ON April 18, 2012; AND IN ADDITION II) TO REMAIN
> CURRENT DURING THE PENDENCY OF THIS AGREED ORDER ON THE
> DEBTOR(S) MONTHLY PAYMENT OF $717.00 TO THE TRUSTEE, THIS
> CHAPTER 13 CASE WILL BE DISMISSED BY THE CLERK OF THE COURT
> UPON AFFIDAVIT OF THE TRUSTEE, WITHOUT HEARING, AND IT IS
> FURTHER
>
> ORDERED that the debtor shall file no response to the Trustee's affidavit that
> does not contain a dispute of fact that said payments were timely made. Any
> response must be filed within 10 days of the filing by the Trustee and
> supported by an affidavit of the debtor.

The Court entered the agreed order the same day.  The order, however, did not resolve all

issues pertinent to confirmation of the Debtor's Second Amended Chapter 13 plan.

The City of Cambridge objected to confirmation on May 3, 2012, listing the following

obligations:   Real estate property taxes and water/sewer charges from fiscal years 2008

to 2012 for 20 Upton Street, Cambridge, MA (totaling $28,965.45 as of May 3, 2012);  2012

excise tax (totaling $92.67 as of May 3, 2012); and 2011 excise tax (totaling $122.23 as of May

3, 2012).[3]  It stated in part:

3. Relative to the Upton Street Property, the Debtor gained a 1/4 interest in the

---

[3] The Debtor listed an $83 expense for automobile insurance, although she did not
disclose an ownership interest in an automobile.  In her second bankruptcy case, she
listed an ownership interest in a 2006 Volkswagen Jetta.  AmeriCredit Financial Services,
Inc. moved for relief from stay.  The Debtor and the creditor obtained court approval of a
stipulation providing for payment of arrears, but on February 8, 2011, AmeriCredit filed
a certificate of non-compliance with the stipulation and obtained relief from the
automatic stay on February 24, 2011 to obtain possession and dispose of its collateral in
accordance with state law.

property as a joint tenant on February 14, 2006. See Deed, dated February 14, 2006, attached as Exhibit C. On January 7, 2011, she and the other joint tenants conveyed the property for $1.00 to Jessie L. Harris for life with a remainder to herself and the other joint tenants. See Deed, dated January 7, 2011, attached as Exhibit D. Therefore, the Debtor currently has a 1/3 interest in the remainder of a life estate.

4. Cambridge's fiscal year 2012 runs from July 1, 2011 to June 30, 2012. By statute, property taxes for fiscal year 2012 are assessed on January 1, 2011, which is the date statutory liens attach to the respective properties. See M.G.L. c. 60, § 37. As the fiscal year 2012 real estate taxes are subject to statutory liens dating back to January 1, 2011, fiscal year 2012 real estate tax bills for 20 Upton Street were assessed when the Debtor was an individual joint tenant of that property, and therefore, fiscal year 2012 real estate taxes are pre-petition and should be part of the bankruptcy. The Debtor was a joint tenant starting in fiscal year 2008, as the date of assessment of fiscal year 2008 is January 1, 2007, and her tenancy started in February 2006.

The Debtor failed to respond the City of Cambridge's Objection and, on May 18, 2012, the Court ordered the Debtor to further amend her Chapter 13 plan.[4]

On May 22, 2012, Boston Private Bank filed a Motion for Relief from the Automatic Stay. It indicated that it was the holder of two mortgages, the first to secure a note given in the original amount of $150,150 and the second to secure a note in the original amount of $39,000. It represented that the total amount outstanding on the first mortgage was approximately $152,617.32 including principal, interest and late fees, but excluding attorneys' fees and costs, and the total amount outstanding on the second mortgage was

---

[4] The Debtor did not list her interest in the Upton Street property in either her first or second Chapter 13 case. The deed attached to the City of Cambridge's Objection suggests that the Debtor, *without court authority* as required by 11 U.S.C. § 363(b), transferred her 1/4 interest in the property as a joint tenant for consideration of $1 to Jessie L. Harris, creating a life tenancy for Jessie Harris and reserving a 1/3 remainder interest for herself and two others.

approximately $38,794.47, including principal, interest and late fees, and excluding attorneys' fees and costs.  According to Boston Private Bank,  an appraisal dated December 8, 2009 established that the fair market value of the Property was $420,000.  It added that, for purposes of its motion, the liquidation value of the Property was $315,000.00, calculated at 75% of fair market value.  Boston Private Bank added that according to Zillow, the value of the Property was approximately $335,000.  Boston Private Bank sought relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1) as well as under (d)(4), alleging the Debtor engaged in a scheme to delay, hinder, or defraud creditors during the pendency of her bankruptcy cases.  It also sought *in rem* relief.  It did not seek relief from stay under § 362(d)(2).

On June 5, 2012, JASC also filed a Motion for Relief from the Automatic Stay, indicating that the Debtor was obligated to it under a note and an Affordable Housing Agreement.  JASC alleged that it, the Debtor, and the City of Cambridge are parties to an Agreement Related to Affordable Housing and Escrow Agreement dated March 29, 2011 (the "Repurchase Rights Transfer Agreement"); that pursuant to that Agreement it succeeded to the rights of the City of Cambridge under the Affordable Housing Agreement dated January 8, 2007; and that pursuant to that Affordable Housing Agreement it was holding the deed to the Property in escrow.  It stated that upon obtaining relief from the automatic stay it intended to repurchase the Property and pay the Affordable Price, which it estimated was $197,000, to Boston Private Bank and record the unit deed.  It sought relief from stay under 11 U.S.C. § 362(d)(1), (d)(2), and (d)(4).

Specifically, JASC stated that the Debtor was obligated to it under a note, dated March 29, 2011, in the original principal amount of $18,173 secured by a mortgage on the Property. It represented that the note was payable in 60 monthly installments of $300, subject to a 2% late payment charge on any overdue amount. It also alleged that the Debtor failed to pay accruing interest on senior secured indebtedness and condominium fees and failed to make any postpetition payments to it. It contended that the amount outstanding under the note, at the petition date, was $16,973; liens against the Property totaled $208,384.79; and the fair market value of the Property, as encumbered by the Affordable Housing Agreement, was $197,000.

The Debtor filed responses to the motions for relief from stay filed by Boston Private Bank and JASC, asserting that she intended to request stipulations from the mortgagees pursuant to which she would pay any outstanding postpetition payments over a period of six months.

On June 19, 2012, the Gateview Condominium Trust filed a Motion for Relief from the Automatic Stay, stating that the Debtor's proportionate share of condominium expenses was $266 per month; that at the commencement of her case the Debtor owed $818; and that the Debtor had failed to pay monthly postpetition condominium fees, late fees, special assessments, expenses and collection costs. It also stated that the Debtor was in arrears postpetition in the amount of $1,430.00 and owed legal fees and filing fees in the amount of $801.00, for a total arrearage of $2,231.00. On July 6, 2012, the Court granted the Gateview Condominium Trust's motion as the Debtor failed to file a timely opposition.

12

On July 6, 2012, the Debtor filed an untimely opposition to the Gateview Condominium Trust's motion for relief from the automatic stay, together with a Motion to Vacate the Court's order granting the Gateview Condominium Trust relief from the automatic stay.  She withdrew the response and Motion to Vacate the same day, however, stating that they were filed in error.

On July 17, 2012, the Debtor moved to convert her Chapter 13 case to a case under Chapter 7.  Before the Court granted the Motion to Convert, the Chapter 13 Trustee filed a Motion for Order Dismissing Case [for] Unfiled Tax Returns and Arrears,[5] noting the Debtor was in arrears in the sum of $2,452, representing 3.4 months of plan payments.

On August 7, 2012, the Debtor withdrew her responses to the motions for relief from the automatic stay filed by Boston Private Bank and JASC, stating: "[a]s reason therefore, the Debtor's case was recently converted to one under Chapter 7 of the United States Bankruptcy Code" adding "[t]he Debtor's responses are moot and the Debtor has no objections to the Motions."  The Court subsequently granted both motions. Prior to withdrawing her responses, the Debtor filed a Statement of Intention in her Chapter 7 case

---

[5] With respect to the tax returns, the Chapter 13 Trustee stated:

The Trustee is unable to recommend confirmation of the Debtor's plan at this time. According to a Notice of un-filed pre-petition state tax returns filed by the Mass. Dept. of Revenue, the Debtor has failed to [sic] the state tax returns for years 2009 through 2011. Pursuant to §1325(a)(9), the court cannot confirm the Plan if the Debtor has not filed all applicable federal, state and local tax returns as required by §1308. The Trustee asserts that failure to file the outstanding returns is grounds for dismissal under §1307(c) for unreasonable delay that is prejudicial to creditors. The MDOR has not withdrawn their notice of unfiled taxes.

13

indicating her intention to surrender the Property.

As noted above, the Debtor filed her Emergency Motion to Re-Convert to Chapter 13 and Reinstate the Automatic Stay due to the scheduled foreclosure sale by Boston Private Bank.   In conjunction with the Emergency Motion, she filed amended Schedules I and J, showing monthly net income of $909.19.  She amended Schedules I and J again on August 6, 2013 and again on August 12, 2013, each time increasing the amount of her monthly net income.

Boston Private Bank objected to the Debtor's Emergency Motion, stating "[t]he relief requested in the Debtor's motion seeking to reinstate the automatic stay fails to identify any legal basis for reinstatement of the automatic stay. Rather, the motion is a last gasp attempt to delay the inevitable foreclosure sale of the Property." As noted above, the Court heard the Debtor's Emergency Motion on July 23, 2013 and subsequently denied it.  At that time, counsel to Boston Private Bank represented that the Debtor's prepetition arrears were approximately $10,000 and that her postpetition arrears were approximately $16,000.

At the July 23, 2013 hearing, the Debtor testified under oath.  When questioned, she admitted that she had not been making monthly mortgage payments and had put no money aside for payments to Boston Private Bank or JASC following the conversion of her case from Chapter 13 to Chapter 7.  Indeed, she testified that she had been "playing catch-up in paying my other bills," including a large NSTAR bill.

Following the hearing, the Court denied the Debtor's Motion to Re-Convert to Chapter 13 and Reinstate the Automatic Stay.  The Court reconsidered its order to permit

14

the Debtor to correct procedural deficiencies, to seek injunctive relief, and to supplement the record. Accordingly, the Debtor commenced an adversary proceeding on July 26, 2013.

On July 25, 2013, before the commencement of the adversary proceeding, JASC filed a Statement of Account Arrearage. It stated that as of the petition date the arrearage was $1,500 and that as of July 24, 2013 the postpetition arrearage was $14,279.64 (exclusive of interest, and additional fees and costs). JASC indicated that its claim included $8,879.64 that it had remitted to Gateview Condominium Trust in order to cure the Debtor's pre- and postpetition arrearages for condominium fees and costs.[6]

B. Proofs of Claim

On August 6, 2013, Boston Private Bank filed a proof of claim, and JASC and the City of Cambridge filed amended their proofs of claim. JASC represented that the amount of its claim as of July 31, 2013 was $25,852.64, "plus reasonable attorneys' fees, expenses, accruing interest and any default interest or charges provided under applicable loan documents." It also indicated that its claim was comprised of principal in the sum of $16,973 plus $8,879.64 in payments made to the Gateview Condominium Trust, which was owed that amount as of September 1, 2012.

In its amended proof of claim, the City of Cambridge included amounts for real estate taxes and water and sewer charges owed relative to the Upton Street property, as well as amounts owed for excise taxes for fiscal years 2011, 2012 and 2013. Those excise taxes relate to a 2003 Ford automobile and a 2006 Volkswagen automobile titled in the Debtor's name.

---

[6] The proof of claim reveals that the $8,879.64 includes $5,633.64 in attorneys' fees, plus $340 in late fees and other fees.

Boston Private Bank in a supplemented its Objection to the Debtor's Motion for a Preliminary Injunction, corrected the amount it was owed, stating that as of the petition date it was owed $140,761.03 with arrears of $9,257.57 with respect to its first mortgage and $38,797 with arrears of $41.77 with respect to its second mortgage. Pre- and postpetition arrears totaled $24,934.88 and $1,015.25, respectively, exclusive of legal fees, costs, and expenses. It added that the Debtor had not made her first mortgage payment of $854.74, inclusive of real estate taxes, or her second mortgage payment of $68.25 both of which were due August 1st.

C. <u>The Adversary Proceeding</u>

Pursuant to this Court's July 24, 2013 order, the Debtor filed an adversary proceeding and a Motion for a Preliminary Injunction. She attached to her Motion letters from two of her children who live with her, a payment advice from the City of Cambridge, showing net wages of $403.47 for the two-week period between June 1, 2013 and June 15, 2013, and a letter from the Social Security Administration dated July 25, 2013 showing a monthly benefit before deductions of $1,651.30 and a net monthly benefit of $1,467.80. In addition, the Debtor attached to her Motion a letter from the Massachusetts Department of Transitional Assistance dated August 30, 2012 stating that "[t]he Department will reopen your Emergency Aid to the Elderly, Disabled and Children Benefits" and "[y]our eligibility begins on 09/01/2012 at $303.70 per month." In the letter, the Department also advised the Debtor she would receive a MassHealth card.

With respect to contributions from family members, one of the Debtor's children

16

contributes $520 per month "toward household expenses in addition to other essential household needs, i.e., laundry detergent, toiletries etc." and the other contributes $220 towards the household expenses and buys groceries when needed. Neither letter was signed under penalty of perjury. In the Debtor's third amended Schedule I filed while this decision was in draft, the Debtor increased the amount of contributions from family members by $130 without supporting statements from her children.

The Debtor submitted a draft Chapter 13 plan in conjunction with her Motion for a Preliminary Objection in which she proposed to make payments of $1,209 for 60 months. She indicated that she intended to cure mortgage arrears to Boston Private Bank in the sum of $26,000; to pay the mortgage of JASC in the sum of $16,973; and to pay taxes owed to the Massachusetts Department of Revenue in the sum of $2,201.126. The Debtor further proposed to make her regular monthly mortgage payments to Boston Private Bank and to pay it directly. She also proposed direct payments to the Gateview Condominium Trust. With respect to both, she indicated that they would retain their liens.

With respect to JASC, the Debtor indicated that she would pay its claim pro-rata with the claims of other unsecured creditors pursuant to 11 U.S.C. § 1322(c)(2). She stated:

> [T]his claim is modifiable because it comes due by its terms during the term of the plan. The claim is hereby modified such that it will be paid in equal monthly installments by way of payments to the chapter 13 trustee for distribution to this creditor. The holder shall retain its lien or ownership interest in the collateral, (Condominium Unit), until payment of the underlying debt as determined under non-bankruptcy law.

With respect to the claim of the Massachusetts Department of Revenue, she stated:

> Pursuant to 11 U.S.C. § 1325(b)(5), pre-petition default will be cured and

17

arrears of $2,201.26 paid through the plan. All payments on this claim will be made by the Trustee. The holder shall retain its lien or ownership interest in the collateral (Condominium Unit) until payment of the underlying debt as determined under non-bankruptcy law.[7]

Finally, with respect to the City of Cambridge, the Debtor stated:

This claim relates to property in which the debtor does not live and has only a 1/3 remainder interest. No distribution will be made on account of this claim because the claim is being paid by the debtor's grandmother, who owns the life estate.

In the liquidation analysis section of her plan, the Debtor valued her 1/3 remainder interest in the property located at 20 Upton Street at $100,000, although on amended Schedule A filed on March 27, 2012 she valued her interest at $195,614. The Debtor proposed to pay in full the priority claim of the Internal Revenue Service of $1,85.14; to pay in full her counsel's fees of $3,500; and to pay in full all unsecured claims, totaling $7,158.73.

On August 6, 2013 and again on August 12, 2013, after the evidentiary hearing in the adversary proceeding, the Debtor amended Schedules I and J. The Debtor lives with two adult children and a five year old step-daughter, who is listed as a dependent on amended Schedule I.[8] Although she did not change her income from her employment as a lunch aide ($805.32 net), plus $1,750 from Social Security disability and $740 from her children, she reduced the amount paid for "[r]ent or home mortgage" by $300, thereby increasing her monthly net income by that amount. Accordingly, her proposed plan payment of $1,209 is

---

[7] The Debtor did not address the Chapter 13 Trustee's Motion to Dismiss in which she cited 11 U.S.C. §§ 1325(a)(9) and 1308.

[8] The Debtor did not list her step-daughter on amended Schedule I filed on March 29, 2012. Rather she listed a son and a daughter, ages 17 and 21, as dependents.

18

$291.81 more than the net monthly income set forth on Schedule J filed in conjunction with her Emergency Motion.

The Debtor's amended Schedule J filed on August 6, 2013 provides for 1) a home mortgage payment of $1,160.13 (increased to $1,214.59 on amended Schedule J filed on August 12, 2013), comprised of payments of $829.13 and $65 to Boston Private Bank with respect to its first and second mortgages; and a payment of $266 to the Gateview Condominium Trust for condominium fees; 2) $110 for electricity and heating fuel; 3) $78 for water and sewer; 4) $210 for telephone; 5) $170 for internet, satellite, and cable charges; 6) $300 for food; 7) $9 for medical and dental expenses; 8) $20 for transportation; and 9) $29 for homeowner's insurance.  The Debtor listed no expenses for clothing; recreation, clubs and entertainment, newspapers, magazines, etc.; childcare or children's education costs; or personal care products and services.

At the trial conducted on August 1, 2013, which was the due date for mortgage payments to Boston Private Bank, the Debtor admitted that she had not paid Boston Private Bank with respect to its first and second mortgage notes.  She also admitted that she had not yet made her monthly payment to the Gateview Condominium Trust or to JASC.  She testified that she receives her Social Security disability income on the third of the month and that her children pay her "on different times during the month," adding "I don't - -I can't - - pay anything on the 1st."

The Debtor's reported Social Security disability income of $1,750 does not equate with either the gross benefit of $1,651 or the net total monthly benefit of $1,467.80 set forth in the

July 25, 2013 letter from the Social Security Administration.[9]  Moreover, the Debtor testified

that she could not make more than $1,050 per month without affecting her Social Security

disability benefits.   Additionally, the Debtor's income does not reflect receipt of $303.70 in

transitional assistance which the Debtor testified was for her step-daughter.

## III. DISCUSSION

### A. Positions of the Parties

Boston Private Bank and JASC objected to the Debtor's Motion for a Preliminary

Injunction, as did the City of Cambridge. Boston Private Bank, in addition to setting forth

its pre- and postpetition arrearages, argued that the Debtor is limited in the amount of

money she may make without jeopardizing her Social Security disability income.  It also

asserted that the Debtor's second mortgage payment has been subsidized by "The MHP

Fund for a period of ten years;" that the subsidy adjusts after year five such that the Debtor

is responsible for a payment of $93.85 as of the petition date and that the subsidy will

terminate in the year 2017.  According to Boston Private Bank, at that time, the Debtor will

be obligated to make a monthly second mortgage payment of $262.80.  It concluded its

argument by observing that the Debtor has been provided with many chances to satisfy her

obligations to Boston Private Bank and to other creditors but has been unable to consistently

make plan payments.

JASC argued that the Debtor's proposed plan understates its claim and that, even

---

[9] The Debtor did not include on Schedule J expenses of $104.90 for medical
insurance premiums or $78.20 for "Part D" premiums, which sums are deducted from
her Social Security benefit.

assuming that the Debtor's Schedules I and J filed on August 6, 2013 have integrity, the additional $299.81 available would be insufficient to satisfy its claim of $25,852.64 over the term of the plan as required by 11 U.S.C. § 1322(c). In JASC's view, not only would the Debtor be required to pay it $430.88 over the life of the plan, rather than $300, it would be entitled to cram down interest.[10]

The City of Cambridge also objected, observing that the Debtor's proposed plan does not treat its claim and that, if the Debtor is permitted to ignore its claim for unpaid taxes and water and sewer charges, the claim may be discharged vis à vis the Debtor, citing <u>Burrell v. Town of Marion (In re Burrell)</u>, 346 B.R. 561, 570 (B.A.P. 1st Cir. 2006).

The Debtor responded, challenging the amount of the claims of the objecting parties. She disputed the amount of Boston Private Bank's claim by asserting the amount of the arrearage set forth in its Objection was wrong. Boston Private Bank amended its statement of its claim accordingly. Nevertheless, the Debtor's plan filed in conjunction with her Motion for a Preliminary Injunction contains no provisions for attorney's fees or other costs. Similarly, the Debtor maintained that she was current with her obligations to the Gateview Condominium Trust and challenged JASC's claim to the extent it included payment of pre- and postpetition condominium fees and expenses in the sum of $8,879.64, including "grossly excessive" legal fees of $5,633.64.[11]

---

[10] The Debtor purported to address this argument by filing an amended Schedule I to increase contributions from her children.

[11] The mortgage held by JASC provides in paragraph 11 that it has the right

21

B.  <u>Injunctive Relief Standard</u>

To obtain injunctive relief, the movant must demonstrate that:

(1) there is a likelihood of success on the merits of the appeal;

(2) the moving party will suffer irreparable harm if a stay is not granted;

(3) the harm to the moving party if the stay is not granted is greater than the injury to the opposing party if the stay is granted; and

(4) the public interest would not be adversely affected by the issuance of the stay.

<u>In re Miraj and Sons, Inc.</u>, 201 B.R. 23, 26 (Bankr. D. Mass. 1996) (citations omitted).  In the context of this case, the Debtor must establish that reimposition of  the automatic stay and conversion to Chapter 13 is warranted and that she has a likelihood of obtaining confirmation of a feasible plan that appropriately treats the claims of secured, priority and unsecured creditors.  In both instances, the Debtor has the burden of proof. *See* <u>Eastern Savs. Bank, FSB v. LaFata (In re LaFata)</u>, 483 F.3d 13, 23 (1st Cir. 2007).

In <u>Povah v. Habsburg and Finn, Inc. (In re Povah)</u>, 455 B.R. 328 (Bankr. D. Mass.

---

to pay all taxes, assessments, water and other charges, with interest, costs and charges accrued thereon, which may at any time be a lien upon the Mortgaged Premises or any part thereof; to pay the premiums for any insurance required hereunder; to incur and pay expenses, including reasonable attorneys' fees in protecting its rights hereunder and the security hereby granted; to pay any balance due under any conditional agreement of sale  or other lien on any articles or fixtures included as part of the Mortgaged Premises; and to make all payments and incur expenses in curing defaults hereunder; and Mortgagor shall pay to Mortgagee on demand an amount equal to all amounts so incurred or paid, together with interest thereon at the rate of 5% per annum from the date of payment by Mortgagee.

2011), this Court considered the appropriate circumstances for conversion of a case from Chapter 7 to Chapter 13 where the Debtor had originally commenced a Chapter 13 case which had been converted to Chapter 7. In Povah, this Court noted the split of authority as to whether conversion from Chapter 13 to Chapter 7 permits a debtor to convert his or her case back to Chapter 13. *See* In re Noll, 491 B.R. 550 (Bankr. E.D. Wis. 2103). Observing that while some courts interpret § 706(a) to mean they have no discretion to convert a case back to Chapter 13 following conversion to Chapter 7, others permit reconversion under appropriate circumstances. *See* Povah, 455 B.R. at 340-41. This Court determined that it had discretion to permit reconversion of the Debtor's case to a case under Chapter 13 in appropriate circumstances, adding "[t]he debtor's circumstances, however, must be closely scrutinized, . . . and the debtor also must establish both good faith and the feasibility of any plan of reorganization." 455 B.R. at 341 (citing In re Anderson, 354 B.R. 766, 769 (Bankr. D.S.C. 2006)).

In view of the Debtor's track record, she has a significant burden of establishing that she can propose a feasible plan and that she can obtain confirmation of, and make payment under, a plan for its duration. In addition, while there is no doubt that she would suffer significant harm if either Boston Private Bank or JASC foreclose, they have filed motions and obtained relief from the automatic stay for cause in the present case. In addition, the Gateview Condominium Trust sought and obtained relief from the automatic stay for cause. The rights and obligations of the Debtor and creditors must be fairly balanced with the provisions of Chapter 13 as the backdrop for entitlement to relief. While it is certainly a goal

23

of bankruptcy law to provide for the restructuring of debt through a Chapter 13 plan, creditors who have obtained orders granting them relief from the automatic stay are entitled to finality. Those orders are not to be disregarded when months later the Debtor offers evidence of part-time employment in an attempt to retain the Property and avoid foreclosure.[12] This is particularly true when the Debtor's track record compels the conclusion that she lacks the resources to make plan payments for more than a few months, let alone for five years. No amount of finagling with Schedules I and J can change the facts.

In this case, the Debtor voluntarily converted her case to Chapter 7. Indeed, she filed a Statement of Intention under penalty of perjury indicating her intention to surrender the Property; she withdrew her objections to motions for relief from stay. Having made those decisions, she must show a substantial change in circumstances to convince this Court that she can do now what she has not been able to do in the past. For the reasons set forth below, the Court concludes that the Debtor has failed to establish, through competent evidence, entitlement to a preliminary injunction. Conversion of this case to Chapter 13 is unwarranted as is the reimposition of the automatic stay.

C. Feasibility

Section 1325(a)(6) of the Bankruptcy Code provides that " . . . the court shall confirm a plan if – . . .the debtor will be able to make all payments under the plan and to comply with

_____

[12] It would appear from the payment advise attached to the Motion for Preliminary Injunction that the Debtor has been employed by the City of Cambridge for approximately six months.

the plan." 11 U.S.C. § 1325(a)(6).  As the court observed in <u>In re Fantasia</u>, 211 B.R. 420 (B.A.P.

1st Cir. 1997),

> To satisfy feasibility, a debtor's plan must have a reasonable likelihood of
> success, i.e., that it is likely that the debtor will have the necessary resources
> to make all payments as directed by the plan. . . . The debtor carries the initial
> burden of showing that the plan is feasible. <u>In re Felberman</u>, 196 B.R. 678, 685
> (Bankr.  S.D.N.Y. 1995); <u>In re Endicott</u>, 157 B.R. 255, 263 (W.D. Va. 1993).
> Before confirmation, the bankruptcy court should be satisfied that the debtor
> has the present as well as the future financial capacity to comply with the
> terms of the plan. <u>In re Crotty</u>, 11 B.R. 507, 511 (Bankr. N.D. Tex. 1981) (a
> definite declaration as to the source and amount of funds necessary to enable
> debtors to make payments under the plan is required).

<u>In re Fantasia</u>, 211 B.R. at 423. In this regard,  the court in <u>In re Hobbs</u>, No. 6:11-bk-19123-WJ,

2012 WL 1681981 (Bankr. C.D. Cal. 2012), citing Katherine Porter, "The Pretend Solution: An

Empirical Study of Bankruptcy Outcomes," 90 Texas Law Review 103, 107–108 (November

2011), observed:

> While the statute presents a simple and concise standard [for feasibility],
> implementation of section 1325(a)(6) has not been nearly as neat and tidy. To
> the contrary, the chapter 13 process (as a statistical matter) has largely failed.
> Nationwide, only one-third of chapter 13 plans succeed. Only one in three
> debtors nationwide actually makes all the required plan payments which
> means that two-thirds (67%) of chapter 13 cases fail nationwide. This rate of
> failure has "persisted for more than thirty years" and has led one professor to
> refer to chapter 13 as the "pretend solution . . . a social program that does not
> work as intended but is not critiqued or reformed because its flaws are
> hidden."

2012 WL 1681981 at * 2 (footnotes omitted). The Debtor's case is representative of Chapter

13 cases that fail.  The Debtor has consistently been unable to make plan payments despite

repeated adjustments to Schedules I and J and financial contributions from family members

and friends.

Courts consider a number of factors in determining feasibility, especially the following:  1) whether the Debtor is able to perform under the plan; and 2) whether the Debtor's budget is realistic.  *See* In re Hobbs, 2012 WL 1681981 at *4-6.

The Debtor, in effect, is seeking a fourth opportunity to perform under a Chapter 13 plan.  Her prior efforts were unsuccessful, and this Court concludes based upon the evidence presented and from the Debtor's Schedules I and J, which she has amended twice in less than one month, that her present proposed plan is unlikely to succeed, particularly as expenses set forth on Schedule J appear to be unrealistically lean.

In the instant case, the Debtor, in her first two plans filed on February 1, 2012, proposed to make monthly payments of $186 and to cure arrears to Boston Private Bank in the sum of $10,000.  She did not propose to pay a dividend to unsecured creditors.  As in her first and second bankruptcy cases, she did not mention the 20 Upton Street property or include it in the liquidation analysis of her initial Chapter 13 plan.  Having been called to account by the Chapter 13 Trustee with respect to the Upton Street property, the Debtor filed, on April 3, 2012, a third amended plan, with a $717 plan payment, listing arrears to JASC, as well as Boston Private Bank, totaling $13,600, and proposing a 100% dividend to unsecured creditors. The Debtor failed to respond to the City of Cambridge's Objection to that plan, however, and the Court ordered her to file a further amended plan. Although she sought extensions of time to further amend her plan, she elected to convert her case to Chapter 7.

In the 13 months since conversion, the Debtor's income has increased, but the amount

26

of debt that she must satisfy to obtain confirmation of a plan has dramatically increased as well, requiring a monthly plan payment of $1,209 ($1,284, if the Court were to consider the second draft Chapter 13 plan). The payment of $1,209 assumes that the Debtor could successfully challenge the claims of JASC and other creditors with respect to entitlement to attorneys' fees and costs and would continue to pay her condominium fees.

In the Debtor's prior Chapter 13 cases, and in this case before it was converted to a case under Chapter 7, i.e., from November of 2009 through July o f 2012, the Debtor was unable to obtain confirmation of a Chapter 13 plan. She was unable to make payments under her proposed plans. As noted above, although the Debtor's income has increased, her plan payments also must increase. The Debtor now makes some additional monies as a lunch aide, but her subsidy for the second mortgage payment to Boston Private Bank will gradually decrease, requiring her to pay more monies directly to the bank. Her proposed plan does not account for that increase. Although the Debtor intimates her adult children could make up any monthly shortfall in the context of her proposed treatment of JASC claim under § 1322(c), the Debtor did not introduce evidence that they, in fact, would do so, and they just as easily could move from the Debtor's residence and set up their own households. There is no written contract requiring them to assist their mother in making plan payments. The Court rejects the Debtor's assertion that a budget shortfall of $130 could be "easily made up by increasing the contributions of Harris' adult children . . . ." The children do not appear to have made up any shortfalls in the past, as the Chapter 13 Trustee repeatedly was compelled to file motions to dismiss due to the Debtor's failure to make plan payments.

27

At the evidentiary hearing held in the main case on July 23, 2013, the Debtor admitted that she had not made payments to either Boston Private Bank or JASC after conversion of her Chapter 13 case to Chapter 7. She testified that during her Chapter 7 case she was paying outstanding bills, including a large bill to NSTAR - - testimony that strongly suggests that her $110 monthly expense for electricity and heating fuel is significantly understated and her income is stretched to pay obligations not reflected in Schedule J. All of the Debtor's expenses set forth on Schedule J appear to be unrealistically lean; there is no cushion for unexpected expenses, or even clothes and hair cuts.

Schedules I and J filed on August 6, 2013, and the Debtor's proposed plan submitted in conjunction with her Motion for a Preliminary Injunction, would not permit a 100% dividend to unsecured creditors, which is required in view of the value of 20 Upton Street, if the claims of Boston Private Bank and JASC are not as she expects. Her proposed plan payments are insufficient to satisfy the claims stated by Boston Private Bank and JASC; they do not take into account attorneys' fees and costs. The Debtor's proposed plan payments will not satisfy any increases in the amount of the claims of Boston Private Bank and JASC. In view of the history of this case and the Debtor's other two Chapter 13 cases, this Court is not inclined to view claims litigation as a substitute for the submission of confirmable plan.

The Debtor submitted amended Schedules I and J on August 12, 2013 and a second draft Chapter 13 to account for the potential increase in the amount of claims. The Court, however, is not persuaded by the Debtor's amendments. Rather, in the Court's view, the

28

Debtor's need to continually amend highlights the problems that conversion and reimposition of the stay would create: litigation and delays. It is time for finality.

In addition to problems with Schedules I and J and the Debtor's proposed plan, the Court notes that the Debtor did not establish good faith in seeking to reimpose the automatic stay and convert her case from Chapter 7 back to Chapter 13. Not only did the Debtor fail to initially list her interest in the Upton Street property (indeed, she appears to have conveyed an interest in that property during her 2010 case without Court authority) the Debtor did not address issues raised by the Chapter 13 Trustee in her Motion to Dismiss, namely the failure to file tax returns. While the Debtor may complain that such scrutiny of the record was not raised at the hearing, in view of the history of the Debtor's cases and extraordinary relief she requests, the Debtor should have considered and addressed all outstanding issues.

In view of the record in this case and the record of the Debtor's prior cases, as well as the Debtor's proposed plan, and the objections of creditors, the Court concludes that the Debtor failed in her burden of proof. Her income is insufficient and her expenses unrealistically lean to warrant the entry of an order reimposing the automatic stay and converting her Chapter 7 case to Chapter 13. The close scrutiny of the Debtor's cases compels the conclusion that the Debtor's plan is not feasible and her good faith is subject to doubt. There is no likelihood that the Debtor could perform under the terms of the existing proposed plan, which would elicit objections from every quarter. Moreover, in the event the case were converted to Chapter 13, after protracted delays and claims litigation, the Court

29

concludes that it is more likely than not that the Debtor would default in plan payments.

In view of the Court's determination as to the Objections filed by Boston Private Bank and JASC, the Court need not address the objection filed by the City of Cambridge. The Debtor's Motion to Strike that Objection is moot.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order denying the Motion for a Preliminary Injunction.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: August 20, 2013